**Albert O. THOMPSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10433.**

District of Columbia Court of Appeals.

Submitted June 10, 1976.

Decided Jan. 27, 1977.

---

1. The second and final installment was paid by the appellant on September 13, 1974.

Jerry Lee Dier, Silver Spring, Md., appointed by this court, for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry and Robert M. McNamara, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER and YEAGLEY, Associate Judges, and HOOD, Chief Judge, Retired.

YEAGLEY, Associate Judge.

Appellant and a codefendant were convicted in a trial by the court of possession of marijuana, a violation of D.C.Code 1973, § 33–402. This appeal followed.[1]

We affirm.

Appellant's only contention is that the trial court's denial of his motion to suppress was error warranting reversal of his conviction. At the hearing on the motion, the government's sole witness was an experienced vice squad investigator of the Metropolitan Police Department. He testified that at 10 p. m. on July 30, 1975, he was riding on the passenger side of an unmarked police car with two other police officers on 14th Street, N.W. As the police car slowly passed a small foreign car, the officer noticed the passenger in the foreign car holding a manila envelope, measuring "about three by four, three by five" inches,

---

1. Appellant's codefendant also noted an appeal but it was subsequently dismissed on his own motion.

in his left hand and a piece of white paper, measuring "about two by three inches", in his right hand. The officer testified that from his prior training at the Bureau of Narcotics and Dangerous Drugs as well as his experience from about 400 previous arrests for drug violations he believed that the manila envelope was a packet of marijuana and that the person holding it was preparing to roll a marijuana cigarette. Therefore, he informed the other officers in the car of what he saw and the foreign car was soon pulled over.

The officers got out of their car and as they approached the stopped car, they detected a "light odor of marijuana coming from the vehicle" and also noticed a partially smoked, "bulky" cigarette of "un-uniform shape" on the console between the two front seats. The driver and the passenger, who was identified at trial as appellant, were thereupon placed under arrest. A subsequent search of a shoulder bag and the seat where appellant was seated recovered four manila envelopes containing marijuana.

Appellant contends that the trial court erred in denying his motion to suppress the tangible physical evidence since "the officer's observations and prior experience did not amount to probable cause to arrest." We do not agree.

■ We first examine whether the police officer was legally justified in ordering the driver of the car to pull over to the curb and stop since that order occurred before the officers detected the odor of marijuana and saw the partially smoked, "bulky" cigarette of "un-uniform" shape. The police, in appropriate cases, may stop a car for the purpose of investigating possible criminal behavior even though no probable cause exists at that time to make

an arrest, and such stops are governed by the "reasonableness" test of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny. *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *United States v. Cousar,* D.C.App., 349 A.2d 454, 455 (1975); *Irby v. United States,* D.C.App., 342 A.2d 33, 37 (1975); *United States v. Thomas,* D. C.App., 314 A.2d 464, 467–68 (1974); *Stephenson v. United States,* D.C.App., 296 A.2d 606, 608–09 (1972), *cert. denied,* 411 U.S. 907, 93 S.Ct. 1535, 36 L.Ed.2d 197 (1973); *United States v. James,* 147 U.S. App.D.C. 43, 45, 452 F.2d 1375, 1377 (1971); *Young v. United States,* 140 U.S. App.D.C. 333, 336–37, 435 F.2d 405, 408–09 (1970).

■ It is unnecessary that probable cause exist for the officers to stop a car to question its occupants when the stop is based on suspicion and supported by "specific and articulable facts," *Terry v. Ohio, supra,* 392 U.S. at 21, 88 S.Ct. 1868; *United States v. Cousar, supra* at 455; *United States v. Thomas, supra* at 467–68; *Stephenson v. United States, supra* at 609, and those facts must be the focal point of any opinion examining the propriety of an investigatory stop. Our analysis of the stop to determine whether that stop was reasonable and legitimate requires "[a]s in most cases involving a claimed unconstitutional search and seizure, . . . a particularized evaluation of the conduct of the officers involved." *Rios v. United States,* 364 U.S. 253, 255, 80 S.Ct. 1431, 1433, 4 L.Ed.2d 1688 (1960), *on remand,* 192 F.Supp. 888 (S. D.Calif.1961).[2] The evaluation involves a three step analysis approved in *Stephenson, supra* at 609:

(1) What particular activity of the person stopped for questioning did the investigating officer observe?

---

2. On remand in *Rios,* the trial judge held that the officers properly approached defendant's taxicab for a routine interrogation and that the defendant's arrest was based on probable cause. The judge relied on the officer's four

years' experience as a narcotics investigator (over 400 arrests) and the officer's knowledge that drugs often are contained in unusual packages (here a rubber contraceptive).

(2) What did that officer know about (a) the activity and the person observed and/or (b) the area where the activity was taking place? and

(3) What was the immediate reaction or response of the person stopped and questioned by the officer?

 In the instant case, the officer observed appellant holding a small manila envelope in one hand and a small piece of white paper in the other; appellant "appeared to be preparing to roll" a cigarette.[3]

Second, the officer, who had received training from the Bureau of Narcotics and Dangerous Drugs, had five and one-half years experience involving some 400 narcotics arrests, 200–250 of which were marijuana-related. The officer testified that, based on his previous experience with the packaging of marijuana, he had reason to believe that appellant had an envelope of marijuana in his hand and that he stopped the car because he suspected somebody was rolling a marijuana cigarette.

The third part of the analysis is not of great importance in the instant case other than to note that the driver of the car complied with the officer's request to pull over and stop. Before the officers could question the car's occupants, they acquired additional information which changed the situation from the initial, limited investigatory stop to a situation providing probable cause for arrest.

Based on the activity seen by the officer coupled with his extensive experience with marijuana arrests, we hold that the initial request that the car pull over and stop was both reasonable and legally justified. Further we hold that the added facts (the officer smelling the marijuana and noticing the "un-uniform" shape cigarette) established the requisite probable cause for appellant's arrest and search. *E. g., Irby v. United States, supra* at 38; *United States v. Heiden,* 508 F.2d 898, 900 (9th Cir. 1974); *United States v. Bowman,* 487 F.2d 1229, 1231 (10th Cir. 1973); *United States v. Barron,* 472 F.2d 1215, 1217 (9th Cir.), *cert. denied,* 413 U.S. 920, 93 S.Ct. 3063, 37 L.Ed.2d 1041 (1973); *People v. Sloan,* 26 N.Y.2d 667, 308 N.Y.S.2d 393, 256 N.E.2d 546 (1970) (memorandum opinion).

There being no other issues raised on appeal, the judgment is

*Affirmed.*

---

3. The officer saw this activity late at night while his car was slowly passing the foreign car; the foreign car was at a standstill waiting for another car to make a right turn. The area was lighted with high intensity yellow lights, and the lights from the slow, heavy traffic provided additional illumination.