STATE of Alaska, Petitioner,

v.

Jack L. SILAS, Respondent.

No. 4237.

Supreme Court of Alaska.

May 25, 1979.

Thomas M. Jahnke, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Av-rum M. Gross, Atty. Gen., Juneau, for petitioner.

Patrick T. Brown of Rice, Hoppner, Hedland, Fleischer & Ingraham, Fairbanks, for respondent.

OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

MATTHEWS, Justice.

Respondent Jack Silas is charged with assault with a dangerous weapon, a violation of AS 11.15.220.[1] It is alleged that Silas pointed a loaded revolver at a person approaching his car and threatened to use it. Prior to trial, the state proposed a jury instruction to the court that would have defined assault with a dangerous weapon as including merely threatening another person with the weapon in a menacing manner. The court rejected this instruction, ruling that it would instruct the jury that assault with a dangerous weapon required an intent "to commit a violent injury upon the person of another." We have granted the state's petition for review, finding a substantial question presented,[2] as evidenced by the conflicting instructions given by various trial courts under AS 11.15.220.[3]

AS 11.15.220 does not define what constitutes an assault. However the majority view in this country,[4] and that which is advocated by the better known commenta-

1. AS 11.15.220 reads:

    *Assault with dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment for not more than 10 years nor less than six months, or by a fine of not more than $1,000 nor less than $100, or by both.

2. Review is authorized by Appellate Rule 24(a)(1),

    where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court.

3. The state has submitted an affidavit to the effect that shortly after Judge Taylor refused the state's instruction in the instant case, Judge Blair, in another prosecution brought under AS 11.15.220, accepted the same instruction.

4. *See, e. g., United States v. Dupree,* 544 F.2d 1050, 1051 (9th Cir. 1976); *United States v. James,* 147 U.S.App.D.C. 43, 44, 452 F.2d 1375, 1378 (1971). *State v. Evans,* 165 Conn. 51, 327 A.2d 576, 578 (1973); *Gilbert v. State,* 347 So.2d 1087 (Fla.App.1977); *State v. Drayton,* 114 N.J.Super. 490, 277 A.2d 398, 400 (App. Div.1971); *State v. Winckler,* 260 N.W.2d 356, 361 (S.D.1977). *See also State v. Boudreau,* 113 R.I. 497, 322 A.2d 626, 628 (1974). *See*

tors,[5] is that either an intent to injure or an intent to cause apprehension of an immediate injury is a mental state sufficient to support a criminal assault conviction. The Alaska legislature has explicitly incorporated both definitions in the new criminal code, which is to take effect in 1980.[6] We hold this to be the better view, and one that accurately reflects longstanding case law in this jurisdiction.

In what seems to be the very first case involving the territorial predecessor of AS 11.15.220, *Jackson v. United States*, 102 F. 473 (9th Cir. 1900), this instruction appeared:

> The drawing of a dangerous weapon upon the person is not necessarily criminal, because it may be done in mere jest; but, if it is done in a menacing and threatening manner, the assault is complete, notwithstanding the fact that no words were used, and *notwithstanding that the defendant did not intend to shoot and kill the person at the time he presents the revolver*, and it is a violation of the statute to threateningly present a deadly weapon at another within the range that the gun might carry.

*Id.* at 484 (emphasis added). This was but the first of numerous Alaska cases to hold that the mere pointing of a loaded weapon may constitute felonious assault. The facts of these cases suggest that the required criminal intent has not been limited to an intent to do bodily harm.

In *Jackson*, an associate of "Soapy" Smith drew his revolver and pointed it at one Tanner, as "Smith's gang" attempted to make its way through an assemblage of "law-abiding citizens" of Skagway, who wished to prevent the gang's departure. When Smith struck one of the assembled, and was immediately shot and killed, Jackson "withdrew his revolver" and "hastily retired." *Id.* at 475–76. *Johnston v. United States*, 154 F. 445 (9th Cir. 1907), involved two men who asserted ownership of the same gold mining claim. As Waskey approached Johnston to physically remove him from the property, the latter drew a gun, saying: "Now, Frank, you are a good friend of mine. You are the last man in the world I want to hurt, but I will have to . . . . There is no occasion for all of this or for any trouble here. I am not going to interfere with you or molest you in any way." *Id.* at 446. In *Randall v. United States*, 215 F.2d 587 (9th Cir. 1954), a bartender refused to serve the defendant's companion. The defendant pointed a gun at the bartender and said: "Give her a drink." *Id.* at 589. In *Soper v. United States*, 220 F.2d 158 (9th Cir. 1955), the defendant held a gun on the complainant, while a second man hit him, apparently because the complainant refused to go out for a drink. *Id.* at 160–161.

In the foregoing situations, each of which led to a conviction for assault with a dangerous weapon, it is possible to infer an intent to inflict bodily harm with the weapon. That the inference is sustainable "beyond a reasonable doubt" is not so readily apparent however. In *Hobbs v. State*, 363 P.2d 357 (Alaska 1961), we indicated that it was unnecessary to rely on such a tenuous inference. In *Hobbs*, one defendant beat and berated a man who had cashed bad checks at the defendant's establishment, while a second defendant stood nearby with a gun. Indicted for assault with the gun, Hobbs claimed on appeal that there was no evidence of an intent to do bodily harm. We acknowledged that the evidence was controverted, but sustained the conviction, holding: "There was evidence from which a

---

generally W. LaFave and A. Scott, Criminal Law § 82, at 609 (1972).

**5.** *See* W. LaFave and A. Scott, Criminal Law § 82 (1972); R. Perkins, Criminal Law 117 (2d Ed. 1969). *See also* Model Penal Code § 201.-10, comment (Tent. Draft No. 9, 1959).

**6.** The new AS 11.41.210 reads in pertinent part:
   (a) A person commits the crime of assault in the second degree [a class B felony authorizing imprisonment for up to 10 years] if

(2) he intentionally places another person in fear of imminent serious physical injury by means of a dangerous instrument.

It shall also be a class B felony under the new code if one attempts to cause serious physical injury with a dangerous weapon and fails. *See* AS 11.31.100 and AS 11.41.200.

jury could have reasonably concluded that the pistol was being used *coercively* in an attempt to force Hansen to make good on the checks . . . ." *Id.* at 359 (emphasis added).

.That an intent to coerce may embody an intent to do bodily harm or an intent to frighten, was made explicit in *Burke v. United States*, 282 F.2d 763 (9th Cir. 1960). In *Burke*, the defendant fired two shots, one to either side of the complainant, and testified that he had intentionally missed. *Id.* at 764–65. The Ninth Circuit upheld the conviction. The court acknowledged that an "intent to do a harm is required," but further stated that no "particular kind of degree of injury" need be intended. *Id.* at 768. It then quoted with approval the holding' of the Connecticut Supreme Court in *State v. Pallanck*, 146 Conn. 527, 152 A.2d 633, 636 (1959):

> To constitute the crime, no specific intent is necessary other than that embraced in the act of making an assault with a dangerous weapon, that is, *an intent to cause fear.*

282 F.2d at 766 n. 5 (emphasis added).

We followed *Burke* in *Herrin v. State*, 449 P.2d 674 (Alaska 1969). There the defendant threatened two police officers with butcher knives, but as the officers' conduct demonstrated, it was unlikely the defendant had intended bodily injury. We upheld the conviction under AS 11.15.220, citing *Burke*. 449 P.2d at 676–77.

Silas contends that our recent opinion in *Menard v. State*, 578 P.2d 966 (Alaska 1978), stands for the proposition that AS 11.15.220 requires an intent to inflict physical injury. However *Menard* specifically noted that there are alternative definitions of assault, and merely held that a showing of apprehension is not an essential element of "every assault," particularly where bodily injury has in fact occurred. *Id.* at 970–71. We also stated in *Menard* that our territorial assault statute was adopted with the interpretation previously placed on it by the Oregon courts, citing *State v. Godfrey*, 17 Or. 300, 20 P. 625 (1889). 578 P.2d at 970. Silas contends that *Godfrey* required

an intent to injure. However *Burke v. United States* explicitly interpreted *Godfrey* in a manner consistent with the dual definition of assault. 282 F.2d at 766. Read in context, *Menard* says nothing to the contrary.

The order refusing the state's instruction is REVERSED.